CLAIR INTEL PROP v. MATSUSHITA The next case is St. Clair Intellectual Property Consultants v. Matsushita et al., 2012-16-52-53-54. Mr. Taggart. May it please the Court, Lee Taggart appearing on behalf of Plaintiff-Appellant St. Clair Intellectual Property Consultants Inc. The District Court's error in granting summary judgment of non-infringement in this case is subject to a NOVA review and correction for three different reasons. First, the District Court misread this Court's FUJIFILM decision construing the claims at issue in this case and found that the claim term plurality of different data formats was limited to image formats. Image format is a separate and distinct claim term and the District Court got it wrong. The District Court misinterpreted this Court's decision in FUJIFILM. Before FUJIFILM, the District Court construed data format to include, to be, the arrangement of digital data in a file including image, audio, text, or other data, etc. You've got a motion to supplement. Yes. And the Court denied that. And that is subject to an abuse of discretion, I would think. It is, under both Rule 16 and Rule 37. And the Court said, even though it's a strategic mistake or an error, that the choice was made and it's outside the rules and denied it. Yes. Your Honor, let me address that directly. Under Rule 16, the good cause standard for amending the scheduling order was met in this case. And the District Court made clear errors on the evidentiary record and in understanding the evidence that constituted an abuse of discretion and mandated reversal by this Court and a remand to the District Court. Can I ask this before you go into that? I had thought that one of your arguments for why the normal abuse of discretion, very discretionary view about allowing supplemental reports, was not quite applicable here is that the District Judge, in applying that supplement, the standard about whether to allow the supplemental report, relied specifically on his merits conclusion about the claim construction. So that these are not independent things, and therefore you have to review the summary judgment's merits decision under whatever standards apply to that in order to ultimately decide. Your Honor, that's exactly why I started where I did, because the District Court said that in applying the penny-pack factors, which go to the exclusion of evidence under Rule 37, the penny-pack factors being the prevailing standard in the Third Circuit since 1994, the key factor of the prejudice to St. Clair of excluding what is clearly critical evidence was essentially a neutral factor here, even though it was case dispositive, because it had considered St. Clair's expert declaration in connection with responding to the motion for summary judgment and didn't think much of those declarations. So in fact the Court here did, in our view improperly, incorporate its substantive review of the expert declaration submitted in response to the motion for summary judgment of non-infringement in dealing with the procedural issues. So it isn't a pure abuse of discretion. I don't think you mean that it was improper for the District Court to incorporate that, because if we correct that error and say he should never have talked about the merits, then there is an independent ground wholly independent of the merits. No, you're right. I don't mean to say that it was improper to incorporate it. What I mean is that it was improper for the District Court to knock out the penny-pack factor, essentially find the most critical penny-pack factor that favored my client to be a neutral factor of no consequence by looking to the underlying expert declarations. So we have a Rule 16 analysis that blends into a Rule 37 analysis, both under abuse of discretion, but the Court sort of did those all together, if you will, and then incorporated into it this review of the expert declaration submitted in response to the substantive motion for summary judgment of non-infringement. On the merits point that got incorporated, putting aside the question of whether an image format issue, how do you have any reasonable case for there being a one-to-one correspondence between different data formats and different computer architectures, other than the, what seems to me, tautological view that I understood your brief to be asserting, that there are different computer architectures according to whatever it takes to understand different formats? Well, I think that's not tautological. It goes right back to what the Roberts Patents taught, and this is the basis for this case. In 1990, the Roberts Patents looked at a world in which there was this division between IBM and Apple, for example. There were other divisions that the Roberts Patents focused on, but the courts here have focused principally on the distinction between the IBM world and the Apple world. In the IBM world, it wasn't just computers from IBM. It wasn't just the operating system that one IBM computer operated or one Gateway computer operated. There were a couple of different operating systems. And because those IBM-related computers could all receive and process the same input-output data format, the Roberts Patents treated those as a single architecture. So, it's not tautological. It's exactly what the Roberts Patents taught. It's just that the modern version of that is no longer the war between IBM and Apple. The modern version of that is the way that smartphones operate, with this side of the smartphone that deals with MMS text messaging and the images that get sent by text messaging, which are quite different than the architecture that deals with SMTP and MIME protocols, under which images can also get sent. But the twain don't meet. So, there is a one-to-one correspondence between the MMS text messaging data format output, as described in the Roberts Patents and as seen in the Accused Room smartphones, and the architecture that allows smartphones of various manufacturers to read and interpret that data. Same is true on the other side. There's a one-to-one correspondence between the architecture of the input-output data formats that allow you to send a still image by SMTP or MIME protocol to either a personal computer or to the personal computer architecture side of a smartphone, and allows those smartphones from different manufacturers to interpret it. Just as in 1990, different types of computers that had an IBM type of architecture could read those different input-output formats. What meaning is left to the second half of the phrase, different data formats for different computers, on that view? I guess I'm not quite understanding how your position wouldn't essentially read out the four different computers piece of the language, because by definition, if you're sending a different format to a device that can understand it, it must have some architecture that allows it to understand it. Not at all. We made a clear distinction here. If you take the cell phone example that we talked about just a moment ago, there's a cell phone computer architecture that responds to, can accept and receive, can process and show an image on an MMS format with all of the envelope data that goes around it, which is the data format that goes with the image format. There's also the SMTP MIME data format with the images that can be read through that format that go to the personal computer architecture, as we've described it, side of the smartphone. There are different architectures associated with it, different microprocessors, different underlying operating protocols, different ways of sending and receiving messages, different envelope information that goes around the images that are sent. So, even if you're sending a JPEG image through MMS, all of the data format that goes around it is different than that same JPEG image that's being sent through an SMTP or a MIME protocol. So, there's clearly two different architectures that we're talking about here. Let me then address the, and I think that if you understand that point, you understand the heart of the reason why the expert declarations in this case and the expert process in this case should have allowed us, after Fujifilm, to come back and respond to those constructions. Procedural fairness would seem to require, in the facts of this case, where we have multiple, in different cases, we have the district court construing these claims multiple times, in various cases, reaching the same construction. St. Clarinet's experts faithfully and dutifully followed the claim construction that the district court issued. There were two jury trials with substantial verdicts under those claim constructions that were not appealed. Didn't the district court say, even though your new theories are untimely, they considered them? The district court said that it considered them, but now that gets us back to the substance of summary judgment of de novo review, because at that point, the consideration was improper in three ways, as we've described in our brief. We have the impropriety of confusing data formats with image formats. We have the impropriety of misinterpreting and misunderstanding and applying the one-to-one correspondence, and we have the impropriety of applying the Claim 16 method step sequence, even to apparatus claims or to method claims of another patent that don't have the same steps. So that's really where we get to this crossover between the Rule 16 and Rule 37 decisions under abuse of discretion and the summary judgment decisions under the de novo review. And because the summary judgment decisions are wrong and the court should apply de novo review to find that, that really comes back into, then, the penny-pack factors under Rule 37. And it speaks directly in the context of this case and the multiple prior claim constructions to whether St. Clair had good cause to have the scheduling order amended. I see that I'm out of my initial time. Let me, if I may, without getting into your but like to have a real quick question, follow on to Judge Taranto's question about the merits. Just to make sure I understand, I think I know the answer to this, but confirm it for me. When you refer to computer architecture, and you referred in a general way to the PC part of the smartphone and the phone part of the smartphone, you're really talking about something that could be entirely the product of software, correct? I mean, you're not talking about something that has to be hardware. Oh, no, it's both. It's microprocessor and software. Okay, but suppose you have one microprocessor, but you have software that enables that microprocessor by invoking one program or another program to read two different types of data. Would you refer to that as two different computer architectures in the context of this patent? I don't know that I can answer that hypothetical because that's not what the RIM devices have. That's why it's a hypothetical because I'm asking for something in general. I'm trying to get at whether what you're saying is that computer architecture is that which allows the computer to work as opposed to something that's embedded and consists of a distinct and different set of hardware. Yeah, and I believe that the Mangione-Smith and the Drake declarations spoke to this directly, and those are in the record of the case, and those declarations spoke to the differences between the cell phone architecture and the computer architecture, and those differences included not just differences in operating software, but different microprocessors, et cetera. So, I believe that the understanding that we have from the record in this case is that those differences are required. Okay. That those differences are required to have the different architecture. All right. I'll sit down and reserve the rest of my time. We'll do that for you. Mr. Massa. May it please the Court, the district court's grant of summary judgment should be affirmed for three independent reasons. First, the district court did not abuse its discretion when it denied St. Clair's attempt to assert a new infringement theory from two never disclosed previously expert witnesses 18 months after the court ordered deadline for that disclosure. Particularly, as we'll get into in a moment, where RIM had requested a stay of the district court litigation to avoid the very problem that St. Clair is complaining of now. And St. Clair opposed that stay. RIM had asked for the district court's… Can I just interrupt? You seem to be going on. I was hoping to hear the numbers two and three before getting back to you. Am I wrong in understanding Judge Stark's explanation about denying the supplemental report to, in fact, depend on his merits view on the summary judgment? Judge Stark did not depend upon his merits view. What he did was he analyzed under the Pennypack Factor, which is a five-factor or six-factor test, depending on how you count that. He found all the factors favored RIM. On the first factor, the importance of the evidence, he found that factor to be neutral. But he did so when, out of an abundance of caution, he considered the merits arguments. Well, he didn't really say out of an abundance of caution in the sense that might make the first ground an independent ground. He actually relied on his view of, I think as you said, his consideration of the new evidence and his assessment of whether it had any real merit in plugging into his analysis of one of the really important factors in deciding whether to kill their claim as a result of lateness in bringing up the issue. But all the factors under Pennypack have to be evaluated in their entirety. And the district court has afforded broad discretion in controlling his docket and in evaluating those factors. He didn't elevate factor one to be a controlling factor. He found all the other factors favored RIM. No, but the question is not controlling. The question is whether they are independent. And I guess I'll just say I don't see that they're independent. And therefore, I don't see that we can avoid discussing his merits consideration of the new evidence. But it doesn't turn on whether his merits consideration was correct or incorrect. The other factors play into that as well. They're considered all the factors. Play into it. But in other words, what it seems to me, and I'm troubled by the same point, it seems to me that it would be an entirely different case if the district court had said at the end of the discussion of the new evidence, Well, regardless of, even if I thought this made this case a compelling case for infringement, I'm still going to rule the way I am because the other factors simply render that factor insufficient to carry the day. That would be a different case. But that's not what the judge said, right? There's nothing here that indicates that the judge regarded the merits factor, if you will, as being inconsequential to the ultimate decision of the waiver point. He did not view the merits as inconsequential. But he recognized that the merits, that it was an extreme sanction. And even recognizing, and he stated that, it's an extreme sanction to exclude their supplementation. He recognized that there was no excuse for St. Clair to have not addressed the competing claims instructions. He said it's Delaware practice. And St. Clair was well aware of this, having litigated these patents starting in 2001 against a series of people. Can I just ask you, since I'm not particularly, I guess the heart of this for me really is the merits. So tell me why the difference in architecture in the accused products, including apparently some difference in physical components, not just stored software loaded by the same processor to read different formats. Why that doesn't meet our Fujifilm definition. Yes, Your Honor. And under the merits, there are two factors I'd like to get to. The still image as well as the one-to-one correspondence. I'll address the one-to-one correspondence. The very argument that St. Clair is making here today, that there can be some sort of software running on the hardware that can allow you to read an MMS and read an SMTP. And somehow that makes two computer architectures. That was explicitly rejected under the Fujifilm decision by this court. That was St. Clair's previous argument. And the court said that it is focusing on a computer architecture difference and that that is the difference between IBM on the one hand and Apple on the other hand. That's the example given in the patent. And that it's about different computer architectures by different manufacturers. That was what was in the prosecution history. That was what was throughout the specification. And that's how this court applied that in Fujifilm. That the difference is not just that you can have some software which allows you to read an email and a text. As a factual matter, I understood your opposing counsel to answer Judge Bryson's question by saying at least in the accused products, the RIM products, it isn't just a matter of different software. So put aside what their theory may be. Just as a factual matter, is there at least a disputed issue of fact as to whether there are different physical components in the BlackBerry that are handling on one side the MMS messages and on the other the SMTP mine? There is no disputed issue of fact. The BlackBerry does not have a separate portion of the device physically delimited that deals with MMS. I just want to be precise. Not to have a separate portion might mean the two portions operate with no overlap in physical facilities at all. I'm asking a different question. Are there any different physical components that, not whether there's some overlap, but whether there's any difference in physical components between what's used for MMS and what's used for SMTP? No, there's no genuine issue of fact with regard to that. There's nothing in the record put in by St. Clair saying that there are different physical components, part of which are used for MMS and part of which are used for email. If I could briefly go to the still image factor because I believe this is an independent grounds and this is quite clear. St. Clair's position is that we in the district court somehow misread the Fujifilm decision to say that the data formats are limited to image formats, but that's the exact words used in Fujifilm. Page 15 of the slip opinion, it says, we agree with Fuji's argument that the use of words still and image throughout the patents and suit limits the claim to a single image or picture. It could not be clearer. Judge Moore, writing in dissent, appreciated that as well. Page two of her dissent, she states quite clearly, the majority holds that the term plurality of different data formats, that's the term we're dealing with here, is limited to still images. That is the end of the story. It is undisputed that the RIM devices have only one still image format. It's a JPEG. St. Clair says when you put that JPEG in a text and you put that same JPEG in an email, somehow you have two different data formats. But they don't dispute that there is only one image file format and that's JPEG and that's what the claims are limited to. This was the Fujifilm decision and it was based on the fact that still image is used throughout the specification, the title, the claims of the patent, the file history, and in fact throughout the re-examination, which is one of the only reasons why these patents still exist after the re-examination process. To get back briefly to the merits, I'm sorry, to the procedural issue, Your Honor, it was clear that at litigating in Delaware that St. Clair should have been aware, as Judge Stark states, when claim construction remains an open issue at the time the parties serve expert reports and infringement contentions, the parties have an obligation to prepare for the fact that the court may adopt the other party's construction. When RIM moved to stay, RIM said in its moving papers that the parties will have to proceed with written discovery, expert reports, etc. under two different claim constructions. St. Clair opposed that but recognized that that was the case and they said patent infringement actions can and do often involve competing claim constructions. What then happened is St. Clair completely ignored the competing claim construction proposed by RIM, even though at the time that was on appeal to this court in Fujifilm. St. Clair even said in its infringement contentions, to the extent the defendants request this court to adopt the Fujifilm proposal, St. Clair believes the defendants still infringe and the reasons for that are set forth in the infringement contentions. There's only one set of reasons in those infringement contentions, that would be still plus video theory. So they knew there was an issue, they knew it was on appeal, they knew that the patent office had decided this is the only reason we're going to allow these patents through reexamination is because it's not limited to still and to video. And St. Clair ignored that and chose not to disclose. Suppose, and I understand that your argument is that this is not this case, although there's some dispute between the parties. But suppose that instead of choosing essentially between the two proposed claim constructions, this court on appeal had come up with a completely different claim construction and sent the case back based on that claim construction. Would you think that the case would stand differently with respect to the rights of a party who had addressed one or both of the pending proposed claim constructions but had not anticipated a third? A completely novel and unanticipated claim construction by this court, upon remand, I believe that both parties should be allowed to address that construction. As you say, it's not to address, it would be addressed presumably with a new infringement theory and new expert evidence and beginning essentially from scratch. Is that what you mean by address? Yes. Address it in the sense of saying we don't like it. Of course. When this court remands with instructions to proceed under the new claim construction, certainly that's what the parties do. Right. As you point out, it's not this case. Well, I'm not sure I'm pointing it out. I'm saying that there's actually a little bit at least of a dispute between the two of you on whether what this court did was actually to embrace fully the proposed claim construction that you had asked for. But not a truly new and novel theory that could not have been addressed. St. Clair had all the information available to it. It certainly knew that a BlackBerry could send an email and it knew that a BlackBerry could send a text. And it had all the information available to it and knowing that Fujifilm, the patent office, and others had said it doesn't apply to both a still image and a video. You have to limit this to a still image. If they had this theory that a text and an email containing a still image was within the claims, they had all the information available to them to disclose that theory at the time. They chose not to. And that's the factor that Judge Stark relied on. They chose not to. It was a strategic decision. Judge Stark had been living with these litigants for years and they had been litigating in Delaware for decades. And Judge Stark weighed all the factors on your penny pack and said there's no excuse for St. Clair to not disclose the theory under that. Has this patent expired? This patent is expired. All the Roberts patents are now expired. Thank you, Your Honor. Thank you, Mr. Massey. Mr. Massey, sorry. Mr. Taggart has a little more than two minutes. I'd like to respond to four points that opposing counsel made with specific references to the record that address each of those. First, the question of whether the district court relied upon its view of the merits of the declarations. The district court said at page GA-15 of the record, however, the impact of exclusion in this case is lessened because the court has considered the expert declarations and new infringement theories that St. Clair seeks to introduce. Clearly, that was a part of the court's decision. Secondly, counsel said that the court found that all of the factors, all of the penny pack factors favored Wrim. That's not true. We've analyzed and discussed that at page 19 of our opening brief and the opinion doesn't support that. Three, I'd like to talk about the different architecture that we were speaking about a moment ago for cell phone computer architecture versus other computer architecture. If you look at the Mangione-Smith declaration at page JA-10-218 of the record, paragraph 19, Mr. Mangione-Smith testified, furthermore, the accused products employ embedded microprocessors, memory structures, and specialized operating system software that combine to form a distinct computer architecture. That doesn't quite do it for you, right? Well, it's a response to is there evidence in the record that supports the notion. I know, but that doesn't say that there are two different microprocessors. It could be the same microprocessor but different operating systems. It could be, yes. On that language, it could be. Right, and the one that I wasn't quite sure about, the cellular communication links, that's in the previous sentence in the parentheses. Is that a relevant indication of a different physical structure? I don't know the answer to that, Your Honor. And the fourth point that I wanted to address was what Judge Stark said about an alternate infringement theory for St. Clair in March of 2010. In addressing Grimm's motion to stay the proceedings waiting on Fujifilm, which ultimately were stayed, and for most of the 18 months the counsels talked about the case was stayed. It was only six months during which the case was not stayed. But in the order from Judge Stark on March 29, 2010, regarding the motion for stay, Judge Stark said at page JA-12-180 of the record, this is particularly true, the proper construction of the disputed claim terms in the Roberts patents is a controlling question of law. This is particularly true of the question of the appropriate construction of the different data format terms. The construction of these terms may not be fully dispositive. That is, as already noted, St. Clair may be able to prove infringement even under a construction that differs from the construction adopted by this court. But noted the importance of the definitive appellate ruling. So even Judge Stark at the time in March of 2010, after all of the events that counsel has referred to as being the things that should have provided St. Clair with notice that it needed to do something different, even Judge Stark in this case was saying there may be another construction here and St. Clair may still have a position that's different from the position that's already taken, even if there's an adverse, even if there's a different claim construction. Thank you, Mr. Taggart, as you may have noted with your red light. We'll take the case under review. Thank you, Your Honor.